UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NEW VIEW GIFTS & ACCESSORIES, LTD., :
: Civil Action No.
Plaintiff, :
:
v. :
:
DONNA PEAKE, t/a and d/b/a :
THE BARRINGTON GROUP :
and :
THE BARRINGTON REP GROUP, INC. :
:
Defendants. :

## COMPLAINT

### The Parties

1. Plaintiff New View Gifts & Accessories Ltd. ("New View") is a Pennsylvania corporation with its principal place of business at 9 West Front Street, Media, Pennsylvania.

2. Defendant Donna Peake ("Peake") is an adult individual residing at 8320 County Line Road, Hinsdale, Illinois who has traded and done business as The Barrington Group.

3. Defendant The Barrington Rep Group, Inc. ("BRG") is an Illinois corporation formed on November 21, 2001, of which Peake is the principal, whose registered agent is Julius H. Shapiro, 222 N. LaSalle Street, Suite 1900, Chicago, IL 60601.

## Jurisdiction and Venue

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) as the parties are citizens of or incorporated in different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

5. Peake is subject to personal jurisdiction in Pennsylvania by virtue of her entry into an oral sales representative agreement (the "Agreement") with New View, a corporation based in Pennsylvania, which Agreement contemplated performance in Pennsylvania and the provision of services in Pennsylvania.

6. BRG is subject to personal jurisdiction in Pennsylvania by virtue of its business relationships that contemplate performance in Pennsylvania and the provision of services in Pennsylvania.

7. Venue is properly laid in this judicial district pursuant to 28 U.S.C. § 1391(a)(2), as a substantial part of the events giving rise to the claims occurred within this judicial district.

## General Allegations

8. New View is engaged in the development, design, sale and marketing of specialty gifts and products in the giftware industry.

9. New View retained Peake in or around 1996 as an independent sales representative to market specified products to specified customers.

10. During the period in which Peake represented New View products, Peake conducted business as an independent sales representative using the name of The Barrington Group, of which she was the sole owner.

11. At the inception of this sales relationship, New View and Peake agreed to the terms of the oral sales representative Agreement.

12. New View and Peake never reduced their oral Agreement to writing or entered into any other written agreement.

13. During Peake's business relationship with New View and pursuant to their oral Agreement, Peake was paid a commission that was a pre-established percentage of "net sales" procured by her, that is, the gross invoice price to customers in Peake's territory less the following: normal and customary rebates, trade discounts and credits for returns an allowances (all to the extent actually allowed); sales and other excise taxes or duties imposed upon or paid by New View with respect to such sales; and transportation charges and insurance for transportation paid by New View, to the extent separately invoiced or separately reported on the invoice.

14. During Peake's business relationship with New View and pursuant to their oral Agreement, Peake was paid a commission only after New View was paid by its customers.

15. During Peake's business relationship with New View and pursuant to their oral Agreement, Peake was paid a commission based on a percentage of the net cash receipt ultimately paid to New View by the customer, and not based on a percentage of the initial invoiced amount.

16. During Peake's business relationship with New View and pursuant to their oral Agreement, Peake was not paid commission based on inventory projections supplied by the customers on her account list unless and until such orders resulted in net cash receipts to New View.

17. During Peake's business relationship with New View and pursuant to their oral Agreement, Peake was paid her commission by the end of the calendar month after receipt by New View of payment for the invoice.

18. On June 18, 2001, Peake resigned her position with New View as a sales representative for resin wall plaques and alternative wall décor effective June 30, 2001.

19. On or about July 13, 2001, Peake resigned her position with New View as a sales representative for all other products.

20. New View customers with whom Peake dealt, some of whom submitted projections of future orders prior to Peake's resignation, either were absorbed by New View's in-house sales staff or were transferred to other New View sales representatives for account maintenance. These new representatives have been designated by New View to receive any commission payments on net receipts received from any orders these customers place that are invoiced since Peake's resignation.

### Count I – Action for Declaratory Judgment
### (Construction of Oral Sales Representative Commission Agreement)
### New View v. Peake

21. New View incorporates by reference the allegations contained in paragraphs 1 through 20 as if set forth fully herein.

22. Subsequent to Peake's resignation, Peake has demanded commission payments in excess of $187,000.

23. A portion of this demand is based on commissions for orders that were invoiced after Peake resigned, some of which were orders taken in-house (but not invoiced) prior to Peake's resignation.

24. Additionally, a portion of this demand is based on commissions for customer projections of possible future orders that certain customers indicated they might make later in 2001 or early 2002, after Peake's resignation.

25. Following Peake's resignation, New View has issued checks to Peake, and through The Barrington Group, for undisputed commission payments due based on sales completed by Peake prior to her resignation.

26. New View's practice of making commission payments to Peake is consistent with New View's treatment of other independent sales representatives who have worked for New View without a written contract.

27. It has never been the policy or practice of New View to pay its sales representatives commissions on orders that were invoiced and shipped after the sales representative resigned, nor has it been the policy or practice to pay commissions based on projections of future orders from a customer in the sales representative's territory where the projections did not result in orders placed, invoiced and shipped prior to the sales representative's resignation.

28. It is not the custom in the industry to pay commissions to a sales representative on orders that have not been invoiced and shipped at the time the sales representative resigns or based on projected future orders placed after the sales representative resigns.

29. The Declaratory Judgment Act, 28 U.S.C. § 2201, permits this Court to declare rights, status and other legal relations of New View with respect to the oral Agreement at issue here and Peake's demands for commissions allegedly due, which constitute a controversy appropriate for judicial determination.

30. Neither the oral Agreement between New View and Peake, past practice, policy, nor industry custom requires New View to pay Peake any commission on orders that were not invoiced and shipped at the time of her resignation from New View.

31. Neither the oral Agreement between New View and Peake, past practice, policy, nor industry custom requires New View to pay Peake any commission based on projections of a customer's possible future orders or based on any orders that have resulted or may result from such projections subsequent to her resignation.

32. New View is entitled to a declaratory judgment establishing that it does not owe any commissions to Peake under the oral Agreement between New View and Peake with respect to orders that were not invoiced and shipped as of Peake's resignation or on projections for future orders that Peake claims to have procured prior to her resignation.

WHEREFORE, New View requests that this Court award the following relief:

A. A declaration that New View does not owe any commissions to Peake under the oral Agreement between New View and Peake with respect to orders that were not invoiced and shipped as of Peake's resignation or on projections for future orders that Peake claims to have "procured" prior to her resignation;

B. Recovery of its reasonable attorneys' fees and costs; and

C. Such other and further relief as this Court deems just and proper.

### Count II – Breach of Duty of Loyalty
### New View v. Peake and BRG

33. New View incorporates by reference the allegations contained in paragraphs 1 through 32 as if set forth fully herein.

34. As a sales representative for New View, Peake was an agent of New View and owed New View a fiduciary duty.

35. As a sales representative for New View, Peake was entrusted with New View's confidential business information regarding New View's products and future product lines, including possible plans to develop a photo box.

36. Despite the confidential nature of Peake's discussions with New View as to New View's possible plans to develop a photo box, Peake discussed these plans with competitors in the industry with whom she had contacts, including North American Enclosures ("North American"), whom Peake also represents in a sales capacity.

37. Peake also shared with North American a proposed contract with New View that contained a proprietary list of New View products and planned projects.

38. Upon information and belief, Peake and/or BRG has used confidential and proprietary information that Peake acquired while representing New View to assist and represent North American in the launch of a line of resin wall plaques, as well as to assist and represent Continental Box Company ("Continental Box") in the launch of a line of memo board products — both of which were displayed by those companies at the May 2002 New York Stationery Show.

39. In addition, despite the confidential nature of New View's possible plans to develop a photo box, Peake discussed these plans with a major department store that was one of New View's customers, without New View's permission and despite the fact that Peake did not represent New View with respect to its photo boxes.

40. As a result of Peake's disclosure of this confidential business information to the department store, New View was forced to make a public announcement of this

product line development prior to New View's intended announcement to the industry at the May 2001 New York Stationery Show and before New View was prepared to maximize its sales efforts of this product with customers such as JoAnn Stores.

41. As a result of Peake's disclosure of confidential business information to customers and competitors, New View has lost business opportunities with JoAnn Stores and other customers.

42. Peake also diverted business from New View to Continental Box, another company whose products Peake sold.

43. In May 2001, Peake diverted a dinner engagement with JoAnn Stores at the New York Stationery Show from New View to Continental Box.

44. Peake attended the dinner and a sales meeting with JoAnn Stores on behalf of Continental Box.

45. Peake attended these events following a meeting she attended with JoAnn Stores in which New View representatives outlined New View's patterns and designs for album products.

46. Upon information and belief, representatives of Continental Box discussed its album business with JoAnn Stores at the meeting and dinner at the Stationery Show.

47. Upon information and belief, New View's album designs were discussed at the Continental Box meeting and dinner at the Stationery Show.

48. Subsequent to this meeting and dinner, and prior to Peake's resignation from New View in July 2001, JoAnn Stores stopped using New View as its vendor of record for album products and instead moved its business to Continental Box.

49. As a result of Peake's diversion of the dinner engagement with JoAnn Stores from New View to Continental Box and her attendance at Continental Box's meeting and dinner with JoAnn Stores, New View lost its album account with JoAnn Stores and suffered economic harm.

WHEREFORE, New View demands judgment against Peake and BRG for compensatory damages, lost profits, attorneys' fees, interest and costs, and such other and further relief as this Court deems proper.

### Count III – Fraudulent Misrepresentation
### New View v. Peake

50. New View incorporates by reference the allegations contained in paragraphs 1 through 49 as if fully set forth herein.

51. As a sales representative for New View, Peake was responsible for representing New View and its products at a sales meeting with representatives of JoAnn Stores and New View's in-house staff at the New York Stationery Show held in May 2001 at the Jacob Javits Center.

52. The sales meeting with JoAnn Stores representatives at the Stationery Show was an opportunity for New View to market existing and new products to one of the largest retail craft stores in the country with stores nationwide.

53. At the time of the New York Stationery Show, JoAnn Stores regularly ordered New View products.

54. At the time of the New York Stationery Show, Peake also represented Continental Box with respect to photo boxes.

55. Peake represented to New View that she could attend New View's sales meeting with JoAnn Stores, along with New View's in-house staff, on New View's behalf.

56. Peake committed to attend the meeting with JoAnn Stores at the Stationery Show as a representative of New View, despite the knowledge that Continental Box would be present at the Stationery Show and separately meeting with JoAnn Stores.

57. During New View's sales meeting with JoAnn Stores at the New York Stationery Show, Peake quit the meeting when the subject turned to photo boxes because of an alleged conflict of interest raised by her relationship with Continental Box and her commitment to market its photo boxes.

58. Peake intended that New View rely on her representation that she would be able to attend the sales meeting with JoAnn Stores along with New View's in-house staff.

59. In fact, Peake misrepresented her ability to attend the JoAnn Stores sales meeting because of the conflict of interest created by her relationship with Continental Box with respect to discussions of photo box products.

60. In justifiable reliance on Peake's representation that she would attend the JoAnn Stores sales meeting on behalf of New View, New View invited Peake to participate in this meeting and did not have another sales representative attend the meeting.

61.     Peake's abrupt departure from this meeting disrupted the relationship that New View was cultivating with JoAnn Stores and left New View without a sales representative present for the remainder of its meeting with JoAnn Stores.

62.     Peake's failure to attend the JoAnn Stores sales meeting in its entirety on behalf of New View and her awkward departure from the meeting resulted in injury to New View by drawing attention to a competitor's photo box product and presenting the image of a splintered and disloyal sales team to New View's customer, JoAnn Stores.

63.     As a result of Peake's departure from the sales meeting, New View lost its long-standing account with JoAnn Stores to its competitor, Continental Box.

64.     The loss of the JoAnn Stores account resulted in lost profits to New View.

WHEREFORE, New View demands judgment against Peake for compensatory damages, lost profits, attorneys' fees, interest and costs, and such other and further relief as this Court deems proper.

### Count IV – Negligent Misrepresentation
### New View v. Peake

65.     New View incorporates by reference the allegations contained in paragraphs 1 through 64 as if fully set forth herein.

66.     Peake represented to New View that she could attend New View's sales meeting with JoAnn Stores at the New York Stationery Show when she ought to have known that she could not and that her representation to this effect was false.

67.     Peake knew or ought to have known that she could not attend the entire sales meeting on New View's behalf because she knew or ought to have known that she would also be presenting Continental Box's products to that same customer at the same Stationery Show and that she would perceive this to be a conflict of interest.

68. As described above, Peake's departure from New View's sales meeting with JoAnn Stores at the New York Stationery Show resulted in New View losing its account with JoAnn Stores and suffering damages.

WHEREFORE, New View demands judgment against Peake for compensatory damages, lost profits, attorneys' fees, interest and costs, and such other and further relief as this Court deems proper.

Respectfully submitted,

_____
Steven K. Ludwig, Esquire
Maren Reichert, Esquire
Fox, Rothschild, O'Brien & Frankel, LLP
2000 Market Street, 10th Floor
Philadelphia, PA 19103
(215) 299-2164/2103
Attorneys for Plaintiff
New View Gifts & Accessories, Ltd.

Dated: July 23, 2002

JS44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September, 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I (a) PLAINTIFFS
New View Gifts & Accessories, Ltd.

## DEFENDANTS
Donna Peake, t/a and d/b/a The Barrington Group
The Barrington Rep Group, Inc.

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF Delaware
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Steven K. Ludwig, Esq. and Maren Reichert, Esq.
FOX, ROTHSCHILD, O'BRIEN & FRANKEL LLP
2000 Market Street, Tenth Floor
Philadelphia, PA 19102     (215) 299-2000

ATTORNEYS (IF KNOWN)
Adam J. Glazer, Esquire
Schoenberg, Fisher, Newman & Rosenberg, Ltd.
222 South Riverside Plaza, Ste. 2100
Chicago, IL 60605-6101

## II. BASIS OF JURISDICTION (PLACE AN X IN ONE BOX)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal place of Business in This State | ☒4 | ☐4 |
| Citizen of Another State | ☐2 | ☒2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☒5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

28 U.S.C. §§ 1332, § 2201 – Action for declaratory judgment construing commission agreement and for claims of breach of duty of loyalty, and fraudulent and negligent misrepresentation.

## V. NATURE OF SUIT (PLACE AN × IN ONE BOX ONLY)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | **PERSONAL INJURY** | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders Suits | ☐ 362 Personal Injury – Med Malpractice | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☒ 190 Other Contract | ☐ 365 Personal Injury – Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **PERSONAL PROPERTY** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 350 Motor Vehicle | | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 355 Motor Vehicle Product Liability | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 360 Other Personal Injury | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 370 Other Fraud | ☐ 791 Empl. Ret. Inc Security Act | ☐ 871 IRS – Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 371 Truth in Lending | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | ☐ 380 Other Personal Property Damage | | | |
| **CIVIL RIGHTS** | ☐ 385 Property Damage Product Liability | | | |
| ☐ 441 Voting | **PRISONER PETITIONS** | | | |
| ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 443 Housing/Accommodations | Habeas Corpus | | | |
| ☐ 444 Welfare | ☐ 530 General | | | |
| ☐ 440 Other Civil Rights | ☐ 535 Death Penalty | | | |
| | ☐ 540 Mandamus & Other | | | |
| | ☐ 550 Other | | | |

## VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)

- ☒ 1. Original Proceeding
- ☐ 2. Removed from State Court
- ☐ 3. Remanded from Appellate Court
- ☐ 4. Reinstated or Reopened
- ☐ 5. Transferred from another district (Specify)
- ☐ 6. Multidistrict Litigation
- ☐ 7. Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT
CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

**DEMAND $** IN EXCESS OF $75,000

Check YES if demanded in complaint
JURY DEMAND: ☐ YES ☒ NO

## VIII. RELATED CASE(S) IF ANY
(See Instructions)
JUDGE
DOCKET NUMBER

DATE 7/23/2002    SIGNATURE OF ATTORNEY OF RECORD [signature]

UNITED STATES DISTRICT COURT

FROF FORM 54 (3/99)
PH1 389702v1 07/22/02

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44

## Authority For Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**(a) Plaintiff - Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first list plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the defendant is the location of the tract of land involved).

(c) **Attorneys.** Enter firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section ☐(see attachment)☐.

**I. Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdiction be shown in pleadings. Place an ☐X☐ in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction is based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an X in this box.

Federal Question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III. Residence (citizenship) of Principal Parties.** This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV. Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause.

**V. Nature of Suit.** Place an ☐X☐ in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section IV above, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**VI. Origin.** Place an ☐X☐ in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate's decision.

**VII. Requested in Complaint.** Class Action. Place an ☐X☐ in this box if you are filing a class action under Rule 23, F.R.C.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is demanded.

**VIII. Related Cases.** This section of the JS-44 is used to reference relating pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

(Rev. 07/89)
PH1 389702v1 07/22/02

# UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA - DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

**Address of Plaintiff:** 9 West Front Street, Media, PA 19063

**Address of Defendant:** 8320 County Line Road, Hinsdale, IL 60521

**Place of Accident, Incident or Transaction:** Pennsylvania
*(Use Reverse Side For Additional Space)*

Does this case involve multidistrict litigation possibilities? ☐ Yes ☒ No

*RELATED CASE IF ANY*

Civil cases are deemed related when yes is answered to any of the following questions:

Case Number: _____ Judge: _____ Date Terminated: _____

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? ☐ Yes ☐ No

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? ☐ Yes ☐ No

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminate action in this court? ☐ Yes ☐ No

CIVIL: (Place an "x" in *ONE CATEGORY ONLY*)

A. *Federal Question Cases:*
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act—Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases (please specify)

B. *Diversity Jurisdiction Cases:*
1. ☒ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability--Asbestos
9. ☐ All other Diversity Cases (Please specify)

## ARBITRATION CERTIFICATION
*(Check appropriate category)*

I, Steven K. Ludwig _____, counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 8, Section 4(a)(2), that, to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000 exclusive of interest and cost;

☒ Relief other than monetary damages is sought.

DATE: 7/23/2002  Steven K. Ludwig, Attorney-at-Law  40417 Attorney I.D. #

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 7/23/2002  Attorney-at-Law Steven K. Ludwig  40417 Attorney I.D. #

CIV. 609
(Rev. 10/90)
FROF FORM 55 (3/99)
PH1 389700v1 07/22/02

## SUMMONS IN A CIVIL ACTION

### UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NEW VIEW GIFTS & ACCESSORIES, LTD.,<br>    Plaintiff,<br><br>v.<br><br>DONNA PEAKE, T/A and D/B/A<br>THE BARRINGTON GROUP<br>    and<br>THE BARRINGTON REP GROUP, INC.,<br>    Defendants | CIVIL ACTION NO.<br><br><br>TO: (NAME AND ADDRESS OF<br>    DEFENDANT)<br><br>Donna Peake, t/a and d/b/a<br>The Barrington Group<br>8320 County Line Road<br>Hinsdale, IL 60521 |

**YOU ARE HEREBY SUMMONED** and required to serve upon

Plaintiff's Attorney (Name and Address)   Steven K. Ludwig, Esquire
Maren Reichert, Esquire
Fox, Rothschild, O'Brien & Frankel LLP
2000 Market Street, 10th Floor
Philadelphia, PA   19103-3291

an answer to the complaint which is herewith served upon you, within days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

| Michael E. Kunz, Clerk of Court | Date: |
|---|---|
| (By) Deputy Clerk | |

AO 440 (Rev. 10/93) Summons in a Civil Action

## RETURN OF SERVICE

| | |
|---|---|
| Service of the Summons and complaint was made by me[1] | DATE |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served: _____

_____

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

    Name of person with whom the summons and complaint were left: _____

☐ Returned unexecuted: _____

_____

_____

☐ Other (specify): _____

_____

_____

### STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

### DECLARATION OF SERVER

    I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____   _____
                    Date                 Signature of Server

                               _____
                               Address of Server

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

New View Gifts & Accessories, Ltd.        :
                                          :
                                          :     CIVIL ACTION NO.
            vs.                           :
                                          :
Donna Peake, t/a and d/b/a The Barrington Group    :
  and The Barrington Rep Group, Inc.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See §1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a)  Habeas Corpus -- Cases brought under 28 U.S.C. § 2241 through § 2255.        ☐

(b)  Social Security -- Cases requesting review of a decision of the Secretary
     of Health and Human Services denying plaintiff Social Security Benefits.    ☐

(c)  Arbitration -- Cases required to be designated for arbitration under
     Local Civil Rule 53.2.                                                       ☐

(d)  Asbestos -- Cases involving claims for personal injury or property damage
     from exposure to asbestos.                                                   ☐

(e)  Special Management -- Cases that do not fall into tracks (a) through (d) that
     are commonly referred to as complex and that need special or intense
     management by the court. (See reverse side of this form for a detailed
     explanation of special management cases.)                                    ☐

(f)  Standard Management -- Cases that do not fall into any one of the other tracks. ☒

7/23/2002
(Date)                                          Attorney-at-law
                                          Steven K. Ludwig, Esq.
                                          Maren Reichert, Esq.
                                          Fox, Rothschild, O'Brien & Frankel LLP
                                          2000 Market Street, Tenth Floor
                                          Philadelphia, PA  19103
                                                   Attorney for Plaintiff

(Civ. 660)

PH1 389693v1 07/22/02

**Civil Justice Expense and Delay Reduction Plan**
**Section 1:03 - Assignment to a Management Track**

(a)   The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)   In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management. In the event that a defendant does not agree with the plaintiff regarding said designation, the defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)   The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)   Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)   Nothing in this Plan is intended to supersede Local Civil Rules 40.1 or 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

## SPECIAL MANAGEMENT CASE ASSIGNMENTS
(See § 1.02(e) Management Track Definitions of the
Civil Justice Expense and Delay Reduction Plan)

Special management cases will usually include that class of cases commonly referred to as "complex litigation" as that term has been used in the Manuals for Complex Litigation. The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985. This term is intended to include cases that present unusual problems and require extraordinary treatment. See § 0.1 of the first manual. Cases may require special or intense management by the court due to one or more of the following factors: (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition. It may include two or more related cases. Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues. See § 0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

(Civ. 660)

PH1 389693v1 07/22/02